FILED

2018 Jan-03  AM 11:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRET H. MAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **CASE NO.:**_____ |
| **METROPOLITAN LIFE** | ) |
| **INSURANCE COMPANY, Inc.,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Comes now the Plaintiff, Bret H. May, and hereby files his Complaint against Metropolitan Life Insurance Company, Inc.

## PARTIES

1. The Plaintiff, Bret May is an insured under Allegis Group Long Term Disability Insurance Policy ("LTD") No. 106470-1-G ("the Plan").

2. Defendant, Metropolitan Life Insurance Company, Inc. ("MetLife") is the Administrator for the Plan issued to Allegis Group that has improperly denied owed benefits to Plaintiff. Upon information and belief, MetLife is a foreign corporation incorporated in the State of Delaware, which conducts business generally in the State of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff asserts claims for long-term disability benefits, enforcement of ERISA rights and statutory violates of ERISA under 29 U.S.C. §1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to utterly reprehensible claim handling procedures by Hartford as they exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mr. May's valid claim for disability benefits.  The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Mr. May, as an employee insured for disability, was supposed to be treated as a beneficiary by the Defendant as statutory fiduciaries.  Instead, the Defendant has breached those duties and victimized Mr. May by engaging in utterly reprehensible claim handling procedures.  As described in more detail below, the Defendant has clearly engaged in bad faith claim handling and Mr. May, at minimum, is patently entitled all relief

that ERISA provides.

## STATEMENT OF FACTS

5.     Mr. May ("Plaintiff") is an insured for benefits under the Allegis Group Long Term Disability Insurance Policy ("LTD") No. No. 106470-1-G, ("The Plan"). MetLife ("Defendant") is the administrator of the policy. (*See* LTD Plan, attached hereto as Exhibit "A").  The Plan provides insureds like Mr. May long-term disability benefits and wavier of premium benefits for his life policy.

6.     Mr. May worked as a Lab Technician until his disabilities forced him to stop working on or about September 5, 2014.

7.     Mr. May's medical disabilities include cervical spondylosis, cervical intervertebral disc disorder, chronic postoperative pain, lumbar spine spondylosis, seizure disorder, frequent occipital distribution headaches, carpal tunnel syndrome, muscle spasm, myalgia, attention deficit disorder, insomnia, depression, anxiety and suffering side effects from medication. As a result, Mr. May is unable to sit or stand for prolonged periods of time. Mr. May also takes medications prescribed by his treating physicians with side effects that cause fatigue and affect his concentration and ability to perform tasks. The symptoms of his conditions render Mr. May completely unable to perform any work.

8.     Mr. May has applied for Social Security Disability Benefits due to his many impairments and his claim is currently pending.

3

9.      Mr. May applied and was approved for long-term disability benefits from MetLife beginning December 7, 2014. MetLife paid long-term disability benefits to Mr. May until wrongfully terminating his benefits because he no longer met the policy definition of "Disabled" on June 19, 2016. (*See* Denial Letter from MetLife, dated June 19, 2016, attached hereto as Exhibit "B").

10.     By letter dated December 16, 2016, Mr. May appealed the wrongful termination of his long-term disability benefits for his physical conditions. Mr. May included with his appeal letter additional medical records. (*See* Appeal Letter, dated December 16, 2016, attached hereto as Exhibit "C").

11.     Despite providing proof of his disability both before the termination of benefits and throughout the appeals process, MetLife refused to award additional benefits. The final denial letter, like previous letters, improperly found that Mr. May did not meet the Policy definition of Disabled. MetLife's denial letters are riddled with attempts to "cherry-pick" the record for evidence that supports its termination and give little or no weight to the plethora of evidence that supports Mr. May's disability. (*See* Final Denial Letter from MetLife, dated March 27, 2017, attached hereto as Exhibit "D").

12.     The Final Denial Letter stated that MetLife employed a physician and a vocational rehabilitation consultant to complete a paper review of Mr. May's claim file and they subsequently opined that Mr. May was capable of performing

his occupation with restrictions and limitations. (*See* Exhibit "D").

13.     As of this date, Mr. May has been denied benefits rightfully owed to him under the Plan. MetLife's decision to terminate benefits under the Plan policy was grossly wrong, without basis, and contrary to the evidence.

14.     Mr. May has met and continues to meet the Plan's definition of disabled.

15.     Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Mr. May's claim as required by ERISA.   Instead, Defendant acted in its own pecuniary interests and violated ERISA by conduct including but not limited to the following: breaching its fiduciary duty to the Plaintiff; reviewing the claim in a manner calculated to reach the desired result of denying benefits; and failing to properly consider and credit the medical opinions of Mr. May's medical providers.

16.     Upon information and belief, MetLife evaluated and paid all claims under the Plan at issue, creating an inherent conflict of interest.

17.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Defendants or to any other entity who may have adjudicated Mr. May's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of

Plaintiff's benefits constitutes an abuse of discretion.

18.     Mr. May has exhausted any applicable administrative review procedures and Defendant's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

**A.     Defendant's Determination that Plaintiff does not meet the Definition of Disabled as stated in the Plan was both Erroneous and Unreasonable.**

19.     The LTD Policy 106470-1-G at issue states, in part:

**Definition of Disability**
Disabled or Disability means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis (such care will not be required if it is determined that it will be of no further benefit); and

1. during your Elimination Period and the next 24 month period, you are:
a. unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; and
b. unable to perform each of the material duties of your Own Occupation; and

2. after the 24 month period, you are:
a. unable to earn more than 80% of your Indexed Predisability Earnings at any gainful occupation for any employer in your Local Economy; and
b. unable to perform the duties of any gainful occupation for which you are reasonably qualified taking into account your training, education, and experience.

(*See* Exhibit "A")

20.     According to MetLife, Mr. May's LTD benefits were approved and paid from December 7, 2014 until June 19, 2016 because MetLife determined that he was unable to perform the material duties of his own occupation. MetLife does not identify any particular reason for choosing the June 19, 2016 termination date and appears to have arbitrarily decided that on the following day Mr. May would have the ability to return to work in a light level job, contrary to the opinions of his treating physicians.

21.     On January 13, 2017, Dr. Richard B. Evans conducted a Physician Consultant Review based on documents provided from MetLife. Dr. Evans noted that Mr. May should avoid hyperextension of the neck and limit overhead work with his arms to five minutes at a time, with a total of 30 minutes of overhead arm work per 8–hour shift. Mr. Evans further noted that Mr. May should be limited to lifting 20 pounds at a time and avoid excessive bending and twisting. Without examining Mr. May nor speaking with Mr. May's physician's, Dr. Evans concluded that there was no indication of restrictions, limitations or side effects from medications taken during the period of June 20, 2016 to January 13, 2017. (*See* Physician Consultant Review, dated January 13, 2017, attached hereto as Exhibit "E").

22.     On March 17, 2017, Susan M. Sineni, a Vocational Rehabilitation Consultant, performed an employability analysis in order to determine occupations

that Mr. May would be able to perform. The employability analysis occurred under the Dr. Evans' conclusion that Mr. May Metlife's denial letter states that Mr. May was found capable of performing his own occupation based on the Occupation Analysis and Labor Market Analysis completed by Susan M. Sineni. Though all credible evidence indicates Mr. May would not physically be able to perform at even a sedentary exertional level, it is clear the essential duties of the job listed requires a level of cognitive functioning that Mr. May cannot maintain due to medication side effects and the inability to maintain concentration, persistence and pace due to pain. Mr. May's inability to work at any level is evidenced by the opinions of his treating physicians. (*See* Occupation Analysis and Labor Market Analysis, dated March 17, 2017, attached hereto as Exhibit "F").

23.    The findings are contrary to the opinions of his treating physicians. Furthermore, Dr. Evans and Sineni never examined Mr. May. Accordingly, Defendant's contention that Mr. May failed to prove that he was disabled under the LTD Plan must be reject as their decision to deny Plaintiff's benefits necessarily imposed a standard that was not required by the LTD Plan's provisions. *See Soucy v. First UNUM Life Ins. Comp.*, 2011 U.S. Dist. LEXIS 27938*89-90.

**B.    Defendant's Decision to Terminate Plan Benefits Was Not Supported By Substantial Evidence.**

24.    MetLife wrongfully chose to give little weight to credible medical evidence from Mr.. May's treating physicians.

8

      1.    <u>MetLife's Reliance on Paper Reviews to Deny Benefits was Arbitrary and Capricious.</u>

25.    Mr. May's claim file is replete with medical records from his treating physicians extensively detailing his limitations. Mr. May's physicians' assessments, treatment and medications they prescribed and administered, demonstrate that Mr. May's diagnosed conditions and symptoms of those conditions are extremely debilitating.

26.    The records of Mr. May's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that he is disabled based on their numerous personal examinations, testing, and procedures. MetLife's conclusion that Mr. May was not disabled was based merely on hired reviewers' cherry-picked assessment of his medical records. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801,809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician").

27.     MetLife's March 27, 2016 denial letter states that it reviewed Mr. May's entire file including records from Dr. Laura K. Hollensworth. (*See* Exhibit "D"). Mr. May's file clearly notes that Dr. Hollensowrth had been treating Mr. May since February 2014 and as a result of the history of treatments, Dr. Hollensworth found that Mr. May suffers from degenerative cervical spinal stenosis, anxiety, attention deficit disorder, and herniation of cervical intervertebral disc with radiculopathy. Yet this opinion, formed from approximately two years of treatment, was arbitrarily dismissed in favor of the paid reviewers' opinions.

28.     In weighing the opinions of Mr. May's providers against those of the reviewers retained by MetLife, the following factors should be considered: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)).  The Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual."  While *Nord* provides that it is not a requirement to adopt a per se rule to treat treating physicians' opinions with more

weight than those of hired medical reviewers, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metro. Life Ins. Co.,* 2005 U.S. Dist. LEXIS 22810, 33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 795-96 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits . . .").

29.     Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001).  The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003)*.*  The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias.  Clearly, in Mr. May's case, these decisions indicate that his treating physicians' evaluations should be afforded greater weight than the opinions of MetLife's consultants.

30.     Accordingly, Defendant's termination of Mr. May's Plan benefits was not properly supported.

2.     <u>Defendant's Failure to Properly Credit Mr. May's Well-Documented Subjective Complaints Was Arbitrary and Capricious</u>.

31.     Admittedly, some of Mr. May's disabling impairments have subjective components; however, they have been diagnosed by his treating physicians based on his medical history, extensive testing, and physical examinations. Mr. May's medical records provided to MetLife show a long history of chronic pain complaints. In 2015, Mr. May was even referred to a pain management specialist, Dr. Hunt Hapworth, due to the severity of his chronic pain. Dr. Hapworth documented Mr. May's chronic pain and treated it with prescription medications. (*See* Dr. Hunt Hapworth's records, attached hereto as Exhibit "G"). Well-documented subjective reports such as Mr. May's should be considered credible and given appropriate weight.

32.     In *Quigley v. UNUM Life Ins. Co. of America,* 340 F. Supp. 2d 215, 224 (D. Conn. 2004), the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints."

33.     An administrator may not exclude a claim for lack of objective

medical evidence unless that standard was made "clear, plain and conspicuous enough [in the policy] to negate layman [plaintiff's] objectively reasonable expectations of coverage." *Saltarelli v. Bob Baker Group Medical Trust et al.,* 35 F.3d 382, 387 (9th Cir. 1994); *see also May v. Metro. Life Ins. Co.,* 2004 U.S. Dist. LEXIS 18486, *26 (N.D. Cal. Sept. 9, 2004) ("MetLife abused its discretion by requiring that Plaintiff meet an additional requirement for eligibility beyond those imposed by the Plan."); *see also Duncan v. Continental Cas. Co.,* 1997 U.S. Dist. LEXIS 1582, *15-17 (N.D. Cal. Feb. 10, 1997) (finding an insurer improperly denied the claim of the plaintiff, who had fibromyalgia, due to a lack of "objective medical evidence" to support her disability claim).

34.    In *Creel v. Wachovia Corp.*, 2009 U.S. App. LEXIS 1733 (11th Cir. Fla. Jan. 27, 2009) and *Oliver v. Coca-Cola Co.,* 497 F.3d 1181, 1196-97 (11th Cir. 2007), *vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit considered when it was substantively reasonable to deny benefits for disabilities involving subjective elements. In *Creel,* the plaintiff applied for disability benefits based on a diagnosis of depression, anxiety, and migraine headaches. She received long-term disability benefits, but the benefits were terminated after twenty-four months pursuant to a mental disorder limitation. She sued the insurance company to recover additional benefits based on her migraine headaches. She provided chart notes, standard

diagnoses, and lab reports to support her claim, but the district court entered

summary judgment against her because she did not provide objective evidence.

The Court of Appeals vacated the summary judgment order, explaining:

> Our prior cases provide guidance for assessing the reasonableness of benefits denials for disabilities that involve some subjective element, such as migraines, fibromyalgia, and chronic pain syndrome. . . . When the plan has no [objective evidence requirement,] we evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Assuming that the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted. Accordingly, an administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review.

*Creel*, 2009 U.S. App. LEXIS 1733 at *7.

35.    Applying this standard, the Court of Appeals in *Creel* found that the

records offered by the plaintiff to corroborate her subjective complaints of

disabling headaches were sufficient to support her claim and held that the

administrator's decision was both wrong and unreasonable. 2009 U.S. App. LEXIS

1733, [WL] at *8.  Similarly, in *Oliver*, the plaintiff sued his employer to recover

long term disability benefits based upon radiculopathy and associated cervical

pain, fibromyalgia, and chronic pain syndrome. The Court of Appeals held that it

was arbitrary and capricious for an employer to deny benefits for disabilities

14

involving elements of subjective pain when the claimant provided ample evidence and the administrator never requested any additional kind of evidence. *Oliver,* 497 F.3d at 1196-97.

36.    Here, Mr. May provided both extensive objective and subjective evidence of his disabilities.  Mr. May's medical records contain well-documented complaints, of pain, weakness, fatigue, dizziness and cognitive impairment. Accordingly, Defendant's decision to deny disability benefits was substantively unreasonable.

**C.    Defendant Unreasonably Failed to Properly Consider Mr. May's Non-Exertional Limitations and the Cognitive Requirements of "Any Occupation".**

37.    As previously stated, the Defendant presumably found that Mr. May is capable of performing sedentary to light level work.  (*See* Exhibits "B, D, E, and F").  However, the occupation MetLife stated Mr. May could perform require far more than the ability to perform the physical requirements of the job.   In *Demirovic v. Bldg. Serv. 32 B-J Pension Fund,* 467 F.3d 208, 213-14 (2d Cir. 2006),* the Court stated, "[A] reasonable interpretation of a claimant's entitlement to payments based on a claim of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances." Thus, an administrator must consider whether a beneficiary has "the vocational capacity to perform any type of work . . . that actually exists in the national economy." *Id.* at

213-215.

38.     The Court must also consider non-exertional limitations including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. *See Rabuck v. Hartford Life and Accident Ins. Co.,* 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

39.     Regarding impairment caused by pain, Mr. May's treating physicians documented the anxiety and depression caused by the chronic pain.

40.     All of Mr. May's treating physicians consistently supported his disability claim in both treatment notes and medical statements provided to MetLife.  Plaintiff's secondary medical issues compound his primary problems and it was unreasonable for the Defendant to fail to properly consider the impacts of Mr. May's non-exertional limitations in its decision.

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

41.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

42.     At all times relevant to this action, Mr. May was under Allegis Group Long Term Disability Insurance Policy ("LTD") No. 106470-1-G "the Plan," within the meaning of 29 U.S. C. §1002(7), and was eligible to receive disability and waiver of premium benefits under the Plan.

43.     As more fully described above, the refusal to provide Mr. May's benefits under the Plan for the period from at least June 19, 2016 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. Defendant's decision to deny Plaintiff benefits constitutes an abuse of discretion as its decision was arbitrary and capricious and not based on substantial evidence.

44.     Mr. May brings this action to recover benefits due to him and to enforce his rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.      The applicable standard of review in this case is the arbitrary and capricious standard;

2.      That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and

capricious review;

3.      From at least August 6, 2014 through the present, Mr. May met the Plan's definition of disabled;

4.      Defendant shall pay Mr. May all benefits due for the period from at least June 19, 2016 through the present in accordance with the Plan;

5.      Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6.      Defendant shall pay Plaintiff's cost of litigation and any and all other reasonable costs and damages permitted by law;

7.      Defendant shall pay attorney's fees for Plaintiff's counsel;

8.      Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

                          Respectfully Submitted,

                          */s/ Peter H. Burke*
                          Peter H. Burke (ASB-1992-K74P)

                          */s/ Jessica Ann Hayslip*
                          Jessica Ann Hayslip
                          (ASB-2464-E98L)

**OF COUNSEL**:

BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone:    205-930-9091
Fax:    205-930-9054

pburke@burkeharvey.com
jhayslip@burkeharvey.com

*Attorneys for Plaintiff Bret May*


**<u>PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:</u>**

Metropolitan Life Insurance Company, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104